# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7289 | **DATE** | 11/29/2001 |
| **CASE TITLE** | In Re: DEMERT & DOUGHERTY INC | 98 B 38160 | 00 A 1117 |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, appellant's appeal is dismissed for lack of jurisdiction.
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| ✓ | Notices mailed by judge's staff. | | NOV 30 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | 11/29/2001 | |
| JS | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | JS mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



DOCKETED
NOV 3 0 2001

| | |
|---|---|
| IN RE:<br><br>DEMERT & DOUGHERTY, INC.<br><br>Debtor.<br><br>———————————————<br><br>PHOENIX CONTAINER, INC., Joel Schonfeld, Schonfeld & Weinstein, LLP, Kenneth Sokoloff, Thomas Bartkovich and Hollow Brook Holdings, L.L.C.,<br><br>Defendants-Appellants.<br><br>v.<br><br>KAREN R. GOODMAN, as Chapter 7 Trustee of DeMert & Dougherty, Inc.,<br><br>Plaintiff-Appellee. | Chapter 7 (Converted from Chapter 11)<br>No. 98 B 38160<br>Adv. No. 00 A 1117<br><br><br><br><br>No. 01 CV 7289 |

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

The complaint in the adversary proceeding which is the subject of this appeal was filed on December 6, 2000, in the United States Bankruptcy Court for the Northern District of Illinois before the Honorable Chief Judge Susan P. Sonderby, by Karen R. Goodman, the chapter 7 trustee ("Trustee") for the bankruptcy estate of DeMert & Dougherty, Inc. ("Debtor") against defendants-appellants Phoenix Container, Inc. ("PCI"), Joel Schonfeld ("Schonfeld"), Schonfeld & Weinsten, LLP (S&W), Kenneth Sokoloff ("Sokoloff"), Thomas Bartkovich ("Bartkovich"), and Hollow Brook

1



Holdings, L.L.C. ("Hollow Brook"). In response, defendants-appellants moved to dismiss the Trustee's complaint, raising both procedural and substantive challenges to Trustee's complaint, including an argument that both mandatory and permissive abstention were warranted in this case under 28 U.S.C. § 1334(c)(1) and (2). The bankruptcy court denied defendants-appellants' motion in its entirety.

Defendants-appellants now appeal, arguing that the bankruptcy court erred in denying defendants-appellants' request for mandatory and permissive abstention. This appeal requires this court to determine first whether it has jurisdiction to hear the appeal under 28 U.S.C. 158(a). If this court finds jurisdiction exists, this court must determine whether the bankruptcy court made clearly erroneous factual findings or made errors of law in declining to abstain pursuant to the mandatory abstention provision of 28 U.S.C. § 1334(c)(2) and whether the bankruptcy court abused its discretion when it determined that permissive abstention was not warranted under 28 U.S.C. § 1334(c)(1). Having considered this matter fully, this court finds that it does not have jurisdiction to hear the appeal pursuant to 28 U.S.C. § 158(a)(1) as an appeal from a final order, and this court also declines defendants-appellants request that this court exercise its discretion and grant defendants-appellants leave to appeal the bankruptcy court's order pursuant to 28 U.S.C. § 158(a)(3). Moreover, this court notes that even if it did consider the appeal on the merits, this court would find that, under the circumstances of this case, mandatory abstention was not required and the bankruptcy court did not abuse its discretion in deciding not to exercise permissive abstention. Accordingly, defendants-appellants' appeal is DISMISSED for lack of jurisdiction.

## BACKGROUND

On November 25, 1998, Debtor filed a voluntary petition for relief under chapter 11 of the

Bankruptcy Code. The Debtor's case was later converted to a case under chapter 7 of the Bankruptcy Code.

### The Samarah Adversary

On March 2, 1999, the Trustee commenced an adversary proceeding ("Samarah Adversary") against Yasar Samarah ("Samarah"), the former CEO of Debtor, complaining that Samarah, while acting as officer and director of Debtor, used $100,000 of the Debtor's funds as earnest money for the purchase of the Pail Division of U.S. Can Company ("U.S. Can") without properly availing the Debtor of the opportunity to participate, thereby breaching his fiduciary duty to Debtor. Ultimately, the assets acquired from U.S. Can were transferred to defendant PCI, an entity formed by Samarah, and Samarah received 500 shares, or 50 percent of the PCI shares ("Samarah Shares"). Based on this alleged breach of fiduciary duty, the Trustee sought an order requiring Samarah to surrender the Samarah Shares to the Trustee.

### The Samarah Settlement

In or around the beginning of August 2000, the Trustee entered into a Settlement Agreement and General Mutual Release ("Samarah Settlement") with Samarah and other Samarah-related entities("Samarah Parties"). At the same time, the Trustee also entered into a settlement agreement ("AEG Settlement") and general mutual release with a creditor of Debtor, American Equities Group, Inc. ("AEG"), which claimed an ownership in 250 of the 500 shares of the Samarah Shares that AEG had previously bought at a public auction held by U.S. Can. Under the terms of the Samarah Settlement, the Trustee acquired the remaining 250 shares of PCI stock still within Samarah's possession that had not been purchased by AEG, and the Trustee agreed to dismiss the Samarah Adversary. In addition, the Samarah Parties assigned to the Trustee "any and all rights and causes

of action against the Phoenix Parties including any rights and causes of action for dilution of the [Samarah Shares] . . . and all rights and causes of action against the Schonfeld Defendants and Other Defendants." (Appellant's App. III, Tab F at PCI000846.) Under the AEG Settlement, AEG transferred the 250 shares of the Samarah Shares that it had purchased from U.S. Can to the Trustee. On August 24, 2000, the bankruptcy court reviewed and approved both the Samarah Settlement and the AEG Settlement.

## State Court Suits Filed by Samarah and Related Entities

In late February, 1999, prior to the Samarah Agreement, Samarah and the entities he controlled had already filed four separate lawsuits in the Circuit Court of Cook County, Illinois, all of which remain pending. Only one of Samarah's four lawsuits, Case No. 99 L 2065 ("State Court Action"), is relevant to this court's discussion today. The State Court Action was filed on February 19, 1999 by Samarah and a limited partnership he controlled, Phoenix Container, L.P. ("PCLP"), against ten different defendants including Sokoloff, Schonfeld, S & W, Hollow Brook, and six other defendants not relevant to this court's discussion. The State Court Action was filed shortly after defendants-appellants allegedly held a secret meeting at which they agreed to eliminate Samarah's ownership interest in PCI stock.

In the State Court Action, Samarah claimed that he hired Schonfeld, an attorney, to represent Samarah in connection with the purchase of the Pail Division of U.S. Can and according to Samarah, he and Schonfeld agreed that in addition to the 500 shares issued to Samarah upon PCI's incorporation, 500 additional shares of PCI stock would be issued to Schonfeld's law firm, S&W, and to Hollow Brook, an entity allegedly controlled by attorneys associated with Schonfeld. Following a November 15, 1997 meeting, an additional 500 shares of PCI stock were issued and the

4

shareholders of PCI became as follows: (1) PCLP, in which Samarah was general partner, 500 shares (50%); S&W, 150 shares (15%); (3) Hollow Brook, 150 shares (15%); (4) Sokoloff, 150 shares (15%); Steven Wall, 50 shares (5%). Samarah claims the PCI board of directors became comprised of Samarah, Schonfeld, Sokoloff, Bartkovich, and Paul Maton. Also at this meeting, Samarah was elected PCI's chief executive officer, Sokoloff was elected PCI's president, Bartovich was elected Vice-President, and Schonfeld was elected secretary. In the State Court Action, Samarah contends that Schonfeld, Sokoloff, and Bartkovich, on behalf of themselves and/or Hollow Brook, conspired to reduce Samarah's ownership interest in PCI from 50% to 25% and to deprive Samarah control of the company, and "wrongfully oust" Samarah by voting to offer 1,000 additional shares of PCI to dilute Samarah's interest in PCI.

In Count I of the State Court Action, Samarah stated a claim of breach of fiduciary duty, conspiracy, wrongful ousting, and breach of promissory note against all named defendants. Count II of the State Court Action alleged willful and malicious breach of fiduciary duty against Sokoloff, and Count III stated a claim for defamation against Sokoloff. At the time of this appeal, the State Court Action remains pending in the Illinois State Court and there is no evidence that the action has progressed beyond the pleadings stage. The Trustee has not been made a party to the State Court Action and it is not known whether or how the pleadings have been amended to reflect the Samarah Settlement.

### The Instant Adversary Proceeding

As stated at the outset of this opinion, on December 6, 2000, the Trustee instituted the adversary proceeding at issue, filing a five-count complaint against defendants-appellants Phoenix, Schonfeld, S&W, Sokoloff, Bartkovich, and Hollow Brook ("Phoenix Adversary"). In Count I, the

5

Trustee seeks the imposition of a constructive trust over all of the PCI stock held by defendants-appellants based on multiple breaches of fiduciary duty in using Debtor's money to finance the purchase of the Pail Division of U.S. Can. In Count II, the Trustee seeks a declaratory judgment that the alleged attempt to dilute the Samarah Shares is null and void, and in Count III, the Trustee states a claim for breach of fiduciary duty against Schonfeld, seeking damages and disgorgement of all of Schonfeld's PCI stock. Finally, Counts IV and V are breach of fiduciary duty claims against Sokoloff and Bartkovich, respectfully. Defendants-appellants moved to dismiss Trustee's suit, raising both procedural and substantive challenges. The bankruptcy court denied defendants-appellants motion to dismiss in its entirety on August 10, 2001.

## JURISDICTION

I. Collateral Order Doctrine

As a preliminary matter, this court must first determine whether it has jurisdiction to hear defendants-appellants' appeal. This court has "jurisdiction to hear appeals from . . . final judgments, orders, and decrees." 28 U.S.C. § 158(a)(1). "[A] decision is ordinarily considered final and appealable under § 1291 [and § 158(a) ] only if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 712, 116 S.Ct. 1712, 1718 (1996) (quoting Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633 (1945)). Orders may also be considered "final" if they meet the requirements of the collateral order doctrine. See, e.g., Quackenbush, 517 U.S. at 710-12, 116 S.Ct. at 1718; Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 114 S.Ct. 1992 (1994); Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 69 S.Ct. 1221 (1949). An order is "final" under the collateral order doctrine if it (1) conclusively determines a disputed question that is completely separate from the

merits of the action, (2) is too important to be denied review, and (3) is effectively unreviewable on appeal from a final judgment. Quackenbush, 517 U.S. at 712-16, 116 S.Ct. at 1719-20 (relying on Richardson-Merrell Inc. v. Koller, 472 U.S. 424, 431, 105 S.Ct. 2757, 2761 (1985); Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457-58 (1978); Cohen, 337 U.S. at 546, 69 S.Ct. at 1225-26). Likewise, the Seventh Circuit defines a collateral order as "an order that finally determines an issue that is separate from the merits of the litigation (hence 'collateral') and that cannot be effectively reviewed on appeal from the final judgment in the litigation." Board of Educ. of Oak Park & River Forest High School Dist. 200 v. Illinois State Bd. of Educ., 79 F.3d 654, 656 (7th Cir. 1996).

Defendants-appellants do not contend, nor could they, that the bankruptcy court's refusal to abstain is a final decision in the sense that it ends the litigation and leaves the bankruptcy court with nothing more to do than execute judgment. Instead, defendants-appellants argue that the bankruptcy court's decision not to abstain fits into the narrow class of collateral orders which, although not meeting the strict definition of finality, are nevertheless immediately appealable. Defendants-appellants argue that the bankruptcy court conclusively determined the issue of abstention, an issue completely separate from the merits of the action, and that the bankruptcy court's order will be effectively unreviewable on appeal from final judgment because the defendants-appellants seek abstention in favor of the Trustee intervening in the State Court Action and the Trustee's chances of successfully intervening decrease as time passes and the State Court Action progresses. Defendants-appellants also contend that the bankruptcy court's order may be effectively unreviewable because if the final judgment is entered in the defendants-appellants' favor, they will have no opportunity to appeal the order denying abstention, but they would still be subject to

7

incurring liability to Samarah in the State Court Action for the same alleged wrongdoing that would have been resolved in the defendants-appellants' favor in this proceeding. Finally, defendants-appellants urge this court to recognize the relatedness of Trustee's claims to those asserted by Samarah in the State Court Action, and the undue prejudice, irreparable harm and judicial waste that will result from the multiple proceedings. This court finds that while the bankruptcy court's order arguably satisfies the first two *Quakenbush* criterion because the order determines conclusively the disputed abstention issue, an issue which is separable completely from the merits of the action, that order fails to satisfy the third *Quakenbush* criterion requiring the decision to be effectively unreviewable on appeal from final judgment.

While the parties do not cite to, nor has this court found, any Seventh Circuit decision directly on the issue of whether a lower court's ruling not to abstain is effectively unreviewable on appeal, the Trustee urges this court to follow the Fifth Circuit's decision in Schuster v. Mims (In the Matter of the Rupp & Bowman Co.), 109 F.3d 237 (5th Cir. 1997). In Schuster, the Fifth Circuit found that "[u]nlike the reverse situation in which the bankruptcy court *abstains* and then is bound as a matter of *res judicata* to honor the judgment of the [state court], thus rendering the abstention decision effectively unreviewable on appeal, *see, e.g.*, Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 12, 103 S.Ct. 927, 935 (1983)," there is no reason why a bankruptcy courts *refusal* to abstain could not be effectively reviewed on appeal. Schuster, 109 F.3d at 240 (emphasis in original). Rather, as the Schuster court noted, once the bankruptcy court renders a final decision with respect to the litigation before it, the party who originally sought abstention would be free to appeal and challenge the appropriateness of the decision not to abstain. See id. Although acknowledging the costs and delay inherent in having to wait to appeal from the denial of abstention

until entry of a final judgment by the bankruptcy court, the Schuster court "[did] not view such delays as sufficient to convey jurisdiction under the collateral order doctrine." Id. While this court agrees with defendants-appellants' argument that there is no hard and fast rule that orders refusing to abstain are never appealable collateral orders, this court does not find that, under the particular circumstances of this case, the bankruptcy court's refusal to abstain is effectively unreviewable or will cause other equally irreparable injury to the appealing party. Delay and costs to defendants-appellants are not grounds alone for a court to hear the appeal. After the bankruptcy court enters final judgment, defendants-appellants would be free to appeal the abstention decision. Accordingly, this court holds that it does not have jurisdiction to hear the appeal under the collateral order doctrine.

II. Leave to Appeal under 28 U.S.C. § 158(a)(3)

Defendants-appellants contend next that even if the bankruptcy court's refusal to abstain does not satisfy the collateral order doctrine, this court should exercise its discretion and grant leave of appeal pursuant to 28 U.S.C. § 158(a)(3). Under this section, a district court may exercise jurisdiction over an interlocutory order of a bankruptcy court if leave to hear the appeal is granted. 28 U.S.C. § 158(a)(3); Fed.R.Bankr.P. 8001(b) and 8003. Although the Bankruptcy Code does not provide any guidance for the district court in determining when an interlocutory appeal is appropriate, the standard set forth in 28 U.S.C. § 1292(b), which governs interlocutory appeals from the district court to the court of appeals, is instructive on the issue. See In re Capen Wholesale, Inc., 184 B.R. 547, 549 (N.D.Ill.1995). Courts applying the standard set forth under § 1292(b) in bankruptcy appeals have adopted its three part test. Under that test, an interlocutory appeal is appropriate when it: (1) involves a controlling question of law; (2) over which there is substantial

9

ground for difference of opinion; and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. See 28 U.S.C. § 1292(b); In re Capen Wholesale, Inc., 184 B.R. at 549. Based upon this court's analysis of the appealability of the bankruptcy court's order in this case using the factors set out in section 1292(b), this court finds that defendants-appellants have not established that the contested legal issue involves a controlling question of law over which one there is substantial ground for difference of opinion.

A question of law is controlling if its resolution is quite likely to affect the outcome or the further course of litigation, even if it is not certain to do so. See Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assoc., 86 F.3d 656, 659 (7th Cir. 1996). Defendants-appellants argue that the bankruptcy court based its decision to deny mandatory abstention on the fact that the defendants-appellants did not establish that the Trustee is a party to the State Court Action and that this issue is a controlling issue because if the bankruptcy court had held differently on this issue, it would have granted mandatory abstention and the litigation would then proceed in state court. In deciding that mandatory abstention was not warranted, the bankruptcy court stated, "[s]ince the evidence does not establish that the Trustee is a party to parallel litigation in the Illinois State Court, this Court cannot conclude that an action involving the same claims is already commenced in a state court." (Appellants' App. III, Tab F at PCI 000866.) This court notes, first, that defendants-appellants have not established that the bankruptcy court rested its decision declining mandatory abstention solely on the fact that there was no evidence that Trustee was a party to the State Court Action. This court finds that, based on the language in the bankruptcy court's opinion, the bankruptcy court also could have based its decision on the additional conclusion that the State Court Action was not "parallel litigation" because the Samarah's claims and Trustee's claims were not "the same claims." Further,

10

and more importantly, the bankruptcy court went on to state in its opinion that even if the Trustee was joined as a party to the State Court Action, the defendants-appellants would not have satisfied their burden of establishing the third requirement to obtain leave to appeal, a showing that the State Court Action could be timely adjudicated. Therefore, this court finds that defendants-appellants have not established the threshold requirement that the issue over which a substantial ground for difference of opinion exists is the "controlling issue."

Furthermore, defendant-appellants have not established that a substantial ground for difference of opinion exists over the issue of whether § 1334(c)(2) requires the defendants-appellants to show that Trustee is a party to the State Court Action. Several judges in this district have held that the requisite difference of opinion exists when there is "a substantial likelihood" that the trial court's ruling will be reversed on appeal. See Trustee of Jartran, 208 B.R. 898, 901 (N.D. Ill. 1997); Boese v. Paramount Pictures Corp., 952 F. Supp. 550, 560-61 (N.D. Ill. 1996); Kirkland & Ellis v. CMI Corp., 1006 WL 674072, at *4 (N.D. Ill. 1996); In re Brand Name Prescription Drugs Antitrust Litig., 878 F. Supp. 1078, 1081-82 (N.D. Ill. 1995). Defendants-appellants contend that because no courts applying § 1334(c)(2) have directly addressed the question before the court in this case of whether § 1334(c)(2) requires that a trustee be a party to the state court litigation, substantial ground for difference of opinion therefore exists over this issue. However, "the very fact that [an issue] has never before been presented does not necessarily make it a matter of substance, so as to warrant an interlocutory appeal." See Baranski v. Serhant, 602 F. Supp. 33, 36 (N.D. Ill. 1985). While the Seventh Circuit has never addressed this issue directly, other federal circuits have held that the mere lack of judicial precedent on the issue does not establish substantial ground for difference of opinion. See In re Flor, 79 F.3d 281, 284 (2d Cir. 1996) (noting that "the mere presence of a disputed issue

that is a question of first impression, standing alone, is insufficient to demonstrate a substantial difference of opinion."); White v. Nix, 43 F.3d 374, 378 (8th Cir. 1994) (commenting that "substantial ground for difference of opinion does not exist merely because there is a dearth of cases"); see also In re Magic Restaurants, Inc., 202 B.R. 24, 26 (C. Del. 1996) (concluding that "a scarcity or void of judicial opinion alone is insufficient to justify an interlocutory appeal."). Accordingly, this court declines to exercise its discretion to grant defendants-appellants leave to appeal.

## ANALYSIS ON MERITS

This court further notes that even if it were to grant defendants-appellants the leave to appeal, this court would nonetheless find that mandatory abstention was not warranted and that the bankruptcy court did not abuse its discretion in denying permissive abstention. The analysis of the issue that follows demonstrates that had this court considered the issues on their merits, this court would have affirmed the bankruptcy court's decision not to abstain.

I. Standard of Review

With respect to the bankruptcy court's decision to decline defendants-appellants' request for mandatory abstention under 28 U.S.C. § 1334(c)(2), this court would review the bankruptcy court's factual findings for clear error and its legal conclusions de novo. See Meyer v. Rigdon, 36 F.3d 1375, 1378 (7th Cir. 1994). In conducting the *de novo* review of the legal conclusions, this court would engage in the same exercise as the bankruptcy court and give no deference to that court's decision regarding mandatory abstention. See Groves v. Apfel, 148 F.3d 809, 811 (7th Cir. 1998). In applying the clearly erroneous standard of review, the court would have to accept the factual determinations of the bankruptcy court unless they either were completely devoid of minimum

12

evidentiary support displaying some hue of credibility or they bore no rational relationship to the supportive evidentiary data. See United States v. Greer, 53 F.3d 334 (7th Cir. 1995) (citing Krasnov v. Dinan, 465 F.2d 1298, 1302 (3rd Cir.1972)).

The bankruptcy court's decision to decline permissive abstention under 28 U.S.C. § 1334(c)(1) would be reviewed under an abuse of discretion standard. See In re Chicago, Milwaukee, St. Paul & Pacific Railroad, 6 F.3d 1184, 1188 (7th Cir. 1993). Although abuse of discretion is a deferential standard, this court would still have to conduct a meaningful review of the bankruptcy court's decision. See Wilfong v. United States, 991 F.2d 359, 364 (7th Cir. 1993). The Seventh Circuit has cautioned that because federal courts should generally exercise their jurisdiction if properly conferred, abstention is the exception rather than the rule. See In re Chicago, Milwaukee, St. Paul & Pacific Railroad, 6 F.3d 1184, 1188 (7th Cir. 1993).

II. Mandatory Abstention

Under 28 U.S.C. § 1334(c)(2), abstention is mandatory where the following criteria are met: (1) the suit is based on a state law cause of action that, although related to a case under title 11, does not arise under title 11 or arise in a case under title 11; (2) there is no separate basis for federal jurisdiction apart from the bankruptcy; (3) an action has already commenced in the state court; and (4) the case could be timely adjudicated in the state court. See Cullen Electric Co. v. Bill Cullen Electrical Contracting Co. (In re Bill Cullen Electrical Contracting Co.), 160 B.R. 581, 585 (Bankr. N.D.Ill. 1993). The bankruptcy court will only be required to abstain if all four requirements are met. The party seeking abstention has the burden of establishing that abstention is appropriate. See H.J. Rowe, Inc. v. Sea Products, In.c (In re Talon Holdings, Inc.), 221 B.R. 214, 221 (Bankr. N.D. Ill. 1998; Carlson v. Attorney Registration and Disciplinary Comm'n of the Supreme Court of

13

Illinois (In re Carlson), 202 B.R. 946, 949 (Bankr. N.D. Ill. 1996).

Looking to the facts of this case, defendants-appellants have established the first two criteria for mandatory abstention under § 1334(c)(2). The causes of action in the Trustee's instant adversary proceeding ("Phoenix Adversary") against defendants-appellants arise under state law, and absent bankruptcy, the suit would not fall within the jurisdiction of the federal courts. This court believes, however, that the bankruptcy court did not err in holding that the third factor had not been established. Defendants-appellants argue that the State Court Action commenced by Samarah is "identical" to the Phoenix Adversary in that they involve the same state law claims and the same underlying facts. Defendants-appellants further contend that it "reasonably appears" the Trustee may intervene in Samarah's State Court Action. While this court recognizes that the State Court Action and the Trustee's instant action may involve the same realm of operative facts, this court does not believe defendants-appellants have satisfied their burden of showing that an action involving the same claims as the Trustee's claims is already commenced in state court.

This court notes, first, that the defendants-appellants have not provided any evidence that Trustee has been made a party to the State Court Action. Arguing that it "reasonably appears the Trustee may intervene," as defendants-appellants do, establishes only that Trustee "may" be able to intervene at some point in the State Court Action and does not sufficiently establish the § 1334(c)(2) requirement that "an action be commenced, and can be timely adjudicated, in a State forum." 28 U.S.C. § 1334(c)(2). Defendants-appellants argue that the bankruptcy court improperly based its decision that mandatory abstention was not warranted on the fact that defendants-appellants did not establish that the Trustee was a party to parallel litigation in state court. Defendants-appellants argue that the plain language of § 1334(c)(2) requires only that "an action be commenced, and can be

14

timely adjudicated, in a State forum . . ." not that the Trustee be an existing party to that action and that the bankruptcy court improperly added that condition to § 1334(c)(2).

This court finds that it need not definitively decide whether Trustee was required to be a party to the State Court Action under § 1334(c)(2) because even assuming that the Trustee was not required to be a party to the State Court Action, this court would still conclude that defendants-appellants have not established that Trustee's state law claims are sufficiently related to Samarah's claims in the State Court Action such that this court could conclude that the Trustee's claims will be timely adjudicated in the State Court Action.

The allegations in Count I of Samarah's State Court Action relate to an alleged fraudulently induced issuance of stock via a purported shareholder voting agreement between Samarah and Schonfeld, which Schonfeld subsequently reneged on. Count I of the State Court Action further alleged that Schonfeld's breach of the voting agreement resulted in Samarah's loss of control of the PCI Board, and Samarah sought relief in the form of the cancellation of any shares the named defendants received as a result of the allegedly false promise made by Schonfeld. In the Phoenix Adversary, the Trustee seeks to impose a constructive trust on the PCI stock because of the diversion of $100,000 from Debtor's bank account to allow the buy-out of U.S. Can's pail division. The relief requested in the Phoenix Adversary is not identical to that requested in the State Court Action. The State Court Action was filed prior to the Samarah Settlement and the AEG Settlements, and these two settlements have now transferred to the Trustee those shares of stock owned by defendants-appellants, on the theory that because the Debtor financed the Phoenix Transaction, defendants-appellants have been unjustly enriched. There has not been any activity in prosecuting the State Court Action since the entry of the Samarah Settlement, and there are questions of fact as to whether

15

the pleadings in the State Court Action have been amended to reflect the Samarah Settlement, and what matters remain pending in the State Court Action.

Further, none of the remaining counts of the Phoenix Adversary relate to the unlawful withholding of payroll or benefits, or any purported defamation by Sokoloff, both of which make up the remainder of Samarah's claims in the State Court Action. Accordingly, if this court considered this issue on the merits, this court would conclude that the bankruptcy court did not err in finding that the defendants-appellants did not establish that the Trustee's claims in the Phoenix Adversary would be adjudicated in parallel state court litigation.

III. Permissive Abstention

Under 28 U.S.C. § 1334(c)(1), "[n]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11, or arising in or related to a case under title 11." The Seventh Circuit has identified the following twelve "somewhat oblique" factors to consider in determining whether the bankruptcy court abused its discretion in deciding not to abstain:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

See Chicago, Milwaukee, St. Paul & Pacific R.R. Co., 6 F.3d 1184, 1189 (7th Cir. 1993).

The Seventh Circuit further notes that "[c]ourts should apply these factors flexibly, for their relevance and importance will vary with the particular circumstances of each case, and no one factor is necessarily determinative." Id.

With respect to the Phoenix Adversary, the bankruptcy court found that factors 2, 5, 7, and 12 weighed in favor of abstention, since state law issues predominate in this non-core action against non-debtor defendants-appellants. The court also found that factor 8 was irrelevant because there is no need to sever claims in this non-core proceeding, and that factors 1, 3, and 6 were neutral, since, according to the bankruptcy court, the Phoenix Adversary presents rather straightforward questions under state law, and substantially all the Debtor's assets have already been liquidated. Finally, the bankruptcy court found that factors 4, 9, and 10 weighed against abstention, as there was no evidence of forum shopping and this proceeding could be timely adjudicated in the bankruptcy court.

Defendants-appellants contend that the bankruptcy court erred in finding that factor 4–the presence of a related proceeding–weighed against abstention because the pending State Court Action involved parties and claims similar to those in the Phoenix Adversary. However, because this court would have affirmed the bankruptcy court's holding that defendant-appellants have not established that the State Court Action would adjudicate all the Trustee's claims in the Phoenix Adversary, it follows that this court would find that the bankruptcy court did not abuse its discretion in concluding that factor 4 weighed against abstention.

Defendants-appellants also argue that factor 10–the presence of forum shopping–supports

17

abstention because by choosing a forum other than the State Court Action, the Trustee now has two chances at his claims. However, as the bankruptcy court noted, defendants-appellants have not set forth any evidence of forum shopping aside from their argument that the State Court Action and the Phoenix Adversary contain similar claims and the same underlying facts. This is not enough to find the bankruptcy court abused its discretion. Finally, defendants-appellants maintain that factors 1 and 6 actually favored abstention, rather than being neutral, as determined by the bankruptcy court. This court would conclude that the bankruptcy court did not abuse its discretion in light of the fact that the Phoenix Adversary presents straightforward questions of state law and the bankruptcy court believes, overall, bearing in mind that the Debtor's bankruptcy case has already been pending for three years, that this matter could be just as efficiently adjudicated in the bankruptcy court. Given the significant deference accorded to the bankruptcy court under the abuse of discretion standard, and because courts must apply these factors flexibly, with no one factor being determinative, if this court analyzed this issue on the merits, this court would conclude that the bankruptcy court did not abuse its discretion in declining to exercise its discretion to abstain.

## CONCLUSION

For all the reasons stated above, defendants-appellants appeal is DISMISSED for lack of jurisdiction.

ENTER:

*James F. Holderman*
JAMES F. HOLDERMAN
United States District Judge

DATE: November 29, 2001